## ATLANTIC COAST LINE R. CO. v. McKINLEY.*

### No. 8061.

Circuit Court of Appeals, Fifth Circuit.

June 11, 1936.

J. A. Franklin and R. A. Henderson, Jr., both of Fort Myers, Fla., for appellant.

Wm. H. Burwell and Marion E. Sibley, both of Miami, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages for the negligent killing of appellee's husband in a grade crossing collision between an automobile and a fast passenger train. The collision occurred about 15 miles north of Jacksonville, Fla., on United States Highway No. 1, the Dixie Highway, the main traffic thoroughfare leading north. The defense was that not any negligence of the defendant, but the careless and reckless conduct of the driver of the automobile, deceased's agent and representative, was the sole proximate cause of the collision.

The evidence in, defendant's motion for a directed verdict overruled, and the case sent to the jury, there was a verdict and judgment for plaintiff. Defendant has appealed on the single ground that its request for an instructed verdict should have been granted. Appellee opposes its claim of error as not only untenable, but as so wanting in merit as to make the appeal frivolous; one only for delay.

Under section 7051, General Laws of Florida 1927, the proof of the collision made out a prima facie case putting the defendant upon proof that its agents exercised all ordinary and reasonable care and diligence. Appellant insists that the proof it made showed this, and shifted the burden back upon plaintiff, Florida East Coast Ry. Co. v. Townsend, 104 Fla. 362, 140 So. 196, 143 So. 445, and that plaintiff failed to discharge it. Appellee's position is that, taken as a whole, the proof made a jury question of whether defendant's negligence was a proximate cause of the injury.

We agree with appellee and the District Judge that it was. Appellant's argument goes on the theory that proof that the train was run at 60 miles an hour, a mile a minute, 80 feet a second up to within 200 feet of a main heavily traveled highway before making any effort to stop, when under the undisputed evidence it could not be stopped while going at that rate of speed within less than 840 feet, has no tendency, in view of the whole evidence, to show negligence because this was the regular scheduled speed, the speed this train customarily makes.

We cannot agree with this view. Whether maintaining that high rate of speed up to and over that crossing, under the evidence in this case taken most favorably for plaintiff, was negligence was for the jury to say. Taking plaintiff's testimony to be true, there was a heavy fog that morning, so heavy that those in the car could not see that there was a crossing until stopping, lowering the window, and looking out to see their way, they noticed it about 15 feet ahead of them. So heavy was the fog that though the driver looked to right and left up the railroad track, he could not see the train until, after starting up in low gear to drive slowly over the crossing, he had gone on to the track when it came looming out of the fog and rushing down upon them. Still taking their testimony to be true as op-

*Rehearing denied July 15, 1936.

posed to the claims of defendant's witnesses that bells were ringing and whistle blasts were blowing long before the crossing was reached, though the driver of the car had his window down and the car was still, no signals were heard from the train until the long warning blast was begun 75 yards away just before the collision, when it was too late to stop the train.

In the light of this testimony it is not too much to say that here was a jury issue upon whether adequate signals were blown and given and upon whether, bearing in mind the consequences to travelers on a public and much traveled highway, of a collision with a train, the operatives of the train were in the exercise of care in continuing to come on at that high rate of speed, without taking any precautions until too late, to avoid the collision, which the engineer's own evidence showed he had some reason to apprehend. He testified that he first saw the automobile when his train was about three quarters of a mile in distance, 45 seconds in time from the crossing, and that he judged it to be about that same distance away and running very fast, about 60 miles an hour, the speed of the train, for the crossing. He figured as each had to go about the same distance, that the automobile, if it did not stop, would beat him over the crossing by 100 feet. He testified too, that if the automobile had maintained the same rate it was traveling, it would have beaten the engine over the crossing at least 100 feet in distance, this would be a second and a quarter in time. On cross-examination he testified that the distance the train and car had to go and the speed at which they were both running would put them both at the crossing at the same time; that, however, the automobile beat the engine to the crossing 250 feet and stopped on the crossing. He testified further that he did not know that the driver's speed would put him and the automobile on the crossing at the same time; he thought the automobile was going to stop. He knew he was not going to stop unless he had to; that he did not know that he was not going to stop in time to save the automobile driver if he was going on that track, but that he did not stop and that he did hit

him; that the automobile was about 250 feet ahead of the engine when it stopped on the crossing; that if the driver had kept up his speed he would have cleared the crossing at least 100 feet; that he was watching the car and had his eye on it from the time he saw the headlight until the engine struck the car; that he did not put on his brakes until, when about 200 feet from the crossing, he saw the car stop.

The jury, putting itself in the position and viewing the matter from the standpoint of the engineer as a race for the crossing and a speculation as to which might get over it first, might well have considered this not a careful, but a negligent attitude, when it is kept in mind that if the nice calculation of the engineer should fail, the engine would destroy the car and its occupants with little or no damage to itself. The engineer and the fireman did testify to the giving of signals, the constant ringing of the bell, and the blowing of the whistle when the train was 1,150 feet from the crossing. But the jury was not compelled to accept their testimony; that these things were done at a sufficient distance from the crossing, and in such manner as to bring warning to the travelers, considering the high speed at which the train was going, until shortly before the collision became inevitable, nor to believe that their failure to take other precautions against the collision was not negligence. While the speed at which a train is moving may not in and of itself be evidence of negligence, a high rate of speed in a fog and over a main traveled highway, may be. Stringfellow v. Atlantic Coast Line R. Co. (C.C.A.) 64 F.(2d) 173; Claughton v. Atlantic Coast Line R. Co. (C.C.A.) 47 F. (2d) 679; Atlantic Coast Line R. Co. v. Claughton (C.C.A.) 75 F.(2d) 626; Norfolk & W. R. Co. v. Holbrook (C.C.A.) 27 F.(2d) 326.

We do not, however, agree with appellee that the appeal was frivolous and for delay. The earnestness and confidence with which the appeal has been briefed and argued does not admit of that conclusion. Maryland Casualty Co. v. Gerlaske (C.C.A.) 68 F.(2d) 497.

The judgment is affirmed, with costs.